IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


TERILEE G. BRUYERE                                              PLAINTIFF

                    v.                    Civil No. 07-3012

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Terilee Bruyere, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") pursuant to  Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i) and 423.  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### Procedural Background

The plaintiff protectively filed DIB and SSI applications on September 24, 2004, alleging an inability to work since July 1, 2004, due to bipolar disorder, depression, mood swings, and anxiety.  (Tr. 10, 271).  Upon plaintiff's request, an administrative law judge ("ALJ") held a hearing on May 25, 2006.  (Tr. 267-300).  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 22 years old and possessed the equivalent of a high school education.  (Tr. 13, 270).  The record reveals that she had past relevant work experience ("PRW") as an animal caretaker at the Humane Society.  (Tr. 13).

AO72A
(Rev. 8/82)

On October 13, 2006, the ALJ entered a written opinion concluding that plaintiff's bipolar disorder was severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 12). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform all levels of exertional activity, but suffers from limitations resulting from bipolar disorder. Specifically, he found that plaintiff can perform work where the interpersonal contact is only incidental to work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. (Tr. 14). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could return to her PRW as an animal caretaker. (Tr. 15).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on February 8, 2007. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 8, 9).

**Evidence Presented**

The medical evidence includes treatment notes from Ozark Counseling Services for outpatient counseling from February 1997 until May 1997. (Tr. 243-258). Notes indicate that plaintiff was referred for counseling by Juvenile Services. A review of these records suggest that plaintiff was diagnosed with bipolar disorder. (Tr. 249). On December 12, 1997, plaintiff was noted to have a global assessment of functioning ("GAF") score of 52. (Tr. 249).

AO72A
(Rev. 8/82)

In 1998, Dr. White prescribed Depakote to treat plaintiff's manic depression.  (Tr. 240-250).  An adult inpatient screening form dated April 29, 1998, and signed by Dr. Victor Francis indicates that plaintiff's GAF score was 65.  (Tr. 241).

Records from the Baxter Regional Medical Center for the period between April 2003 and August 2005 indicate that plaintiff was treated for depression, bipolar disorder, a personality disorder, lower abdominal pain, back pain, an upper respiratory infection, a viral syndrome, general complaints such as muscle pain associated with the flu, a sinus infection, a cat bite, and dysmenorrhea.  (Tr. 213-258).

On July 10, 2002, plaintiff was treated following an overdose of Paxil and Klonopin.  (Tr. 234-235).  Plaintiff apparently overdosed on these medications following an argument with her boyfriend.  (Tr. 234-239).

Records indicate that plaintiff had been treated by Dr. Stephen Dollins, a psychiatrist, since October 22, 2001.  (Tr. 200-212).  His treatment notes reveal that plaintiff had experienced "ups and downs" in her progress due to disagreements with her sister, the holidays, a miscarriage, and an engagement.  (Tr. 204, 205, 206, 209).  Progress notes reveal that she tolerated the Lithium, Effexor XR, Lorazepam, and Trazadone well.  (Tr. 208, 210).  Further, Dr. Dollins noted no symptoms of psychosis.  (Tr. 200).

In April 2004, Dr. Dollins noted that plaintiff was tolerating the Lithium well.  (Tr. 210).  At this time, her noted her mood to be stable.  (Tr. 210).  Then, on September 30, 2004, Dr. Dollins added Effexor XR to her medication regimen, due to increased symptoms of depression.  (Tr. 209).  The record indicates that plaintiff had recently quit her job due to conflict with her co-workers.  (Tr. 209).

3

On November 15, 2004, plaintiff underwent a mental status evaluation with Dr. Adam Brazas, a psychologist. (Tr. 192-199). Plaintiff indicated that she had never been hospitalized for bipolar disorder and had sought only outpatient counseling since the age of 14. (Tr. 193). She stated that she was currently being treated by Dr. Dollins as well as participating in counseling sessions at Ozark Counseling Services. Dr. Brazas noted that plaintiff was fully oriented, in contact with reality, had intact judgment and abstract thinking, and possessed an estimated I. Q. of 80 or greater. (Tr. 196-197). Although he found no limitations regarding her communication skills, he did indicate that she had limitations in social skills due to her tendency to cause conflict with others. Plaintiff indicated that she did not function well around others, resulting in severe and chronic conflicts with co-workers. (Tr. 198). However, plaintiff had no limitations in taking personal responsibility for her actions and did not need special supervision. Dr. Brazas noted no limitations in concentration, persistence, or pace and no evidence of psychosis. (Tr. 198-199). Therefore, he diagnosed her with bipolar disorder and assessed her with a GAF of 48. (Tr. 197).

In February 2005, plaintiff reported that the Effexor XR helped a lot with her depression. (Tr. 208). Due to symptoms of insomnia and nervousness, Dr. Dollins prescribed Trazadone to be taken in addition to her other medications. (Tr. 208). By May 2005, her mood, insomnia, and energy level had improved. (Tr. 207). However, due to the holidays, plaintiff's mood was again depressed in December 2005. (Tr. 205). Because she had been tolerating her medication well, plaintiff determined that no change in medication would be necessary unless her mood did not improve after the holidays. Her mood seems to have improved. On March 3, 2006, Dr. Dollins noted that plaintiff was doing "pretty good." (Tr. 204). Although she expressed some concern

4

about her sister, plaintiff indicated that she had been tolerating things well and did not feel that a change in medication was warranted.  (Tr. 204).

**<u>Applicable Law</u>**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

5

1382(3)(c).  A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## Discussion

We first address the ALJ's assessment of plaintiff's subjective complaints.  The ALJ was required to consider all of the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id*.  As the United States Court of Appeals for the Eighth Circuit  recently observed, "Our touchstone is that

6

[a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

At the onset, we note that plaintiff has made no allegations of a physical impairment. The record does reveal that plaintiff was treated in the emergency room for a variety of physical symptoms, but there is no evidence of consistent treatment for any specific physical impairment(s). *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). We have repeatedly stated that an ALJ has no duty "'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *see also Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993) ("The ALJ, however, had no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability."); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989) (ruling that ALJ did not err in not ordering consultative examination before concluding claimant had no mental impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety). Because the plaintiff did not allege disability based on physical impairments in her

applications for disability insurance and supplemental security income benefits, nor during her administrative hearing, we hold that the ALJ adequately developed the record in this case.

The evidence makes clear that plaintiff has been diagnosed with bipolar disorder and has suffered from symptoms related to this disorder since adolescence. However, in spite of her condition, plaintiff was able to work consistently for almost two years prior to filing for disability. *See Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (claimant worked with her impairments for years). While we note Dr. Brazas' GAF assessment score of 48, assessed in 2004, we also note the progress notes of plaintiff's treating psychiatrist, Dr. Dollins, which indicate that plaintiff's condition has responded well to treatment. In fact, plaintiff has even reported some improvement in her condition since beginning the medications. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). The evidence also indicates that her second and last suicide attempt occurred in 1998. (Tr. 195). Therefore, we cannot say that the ALJ erred in his determination that plaintiff's condition had improved with treatment.

Plaintiff contends that she had to quit work due to conflicts with her co-workers (a symptom of her mental diagnoses) and that this lends credence to her claim for disability. However, she fails to also note that she testified that she quit her job because her boss was hitting on the female employees. (Tr. 193, 271, 273, 281). A plaintiff's reason for leaving work is relevant to their credibility, especially in cases where the plaintiff's employment ceased for reasons unrelated to their medical condition. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). As there is clearly some question regarding plaintiff's reason for leaving her previous employment, we

8

cannot say that it was error for the ALJ to consider this inconsistency in his credibility
determination.

Contrary to plaintiff's contention, record does not support a finding that plaintiff was
psychotic.  The mere fact that a person practices Wicca, believes in magical powers, hears music
without a television or radio being on in the background, or sees shower curtains move or sink
faucets turn off and on without assistance does not necessarily indicate the presence of psychotic
symptoms.  There are many people in our culture who practice varying forms of witchcraft and
believe in the power of magic.  In fact, a part of Wiccan theology is the belief in a supernatural
power that is "naturally potential to all."  *See Wiccan Beliefs* and *What Is Wicca*, *at*
www.magicwica.com.  Likewise, many people in our society believe in the existence of ghosts
and the supernatural.  This does not, however, make those individuals psychotic. The record in
this case simply does not reflect that plaintiff was suffering from psychosis or psychotic
behavior.  In fact, Dr. Brazas specifically noted that plaintiff's speech was rational, lucid, and
adequately organized.  (Tr. 194).  She denied hallucinations, and Dr. Brazas found no indication
fo any delusional or paranoid thought process.  Further, plaintiff denied possessing any unusual
powers.  (Tr. 194).  Dr. Dollins notes are even devoid of any evidence to suggest that plaintiff
was suffering from psychosis.  Therefore, aside from plaintiff's blind allegations, there is simply
no objective medical evidence to substantiate plaintiff's contention.

Plaintiff also contends that the ALJ failed to properly consider all of her impairments in
combination with her bipolar disorder.  Specifically, she refers to diagnoses of major depression,
dysthymia, mood swings, mixed personality disorder, rapid cycling depression, suicide attempts,
and severe and chronic conflicts with co-workers.  We note, however, that bipolar I disorder is

9

defined as "a mood disorder characterized by one or more manic episodes, possibly alternating with major depressive episodes." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM) IV-TR 345 (4th ed. 2000).  A review of the DSM reveals that one of the symptoms of a depressive episode associated with bipolar disorder is "increased irritability (e.g., persistent anger, a tendency to respond to events with angry outbursts or blaming others, or an exaggerated sense of frustration over minor matters.)," very similar to the definition of major depression. *Id*. at 349, 369.  The symptoms of mania also include irritability and speech "marked by complaints, hostile comments, or angry tirades." *Id*. at 358.  Another common symptom associated with a manic episode is a lasting period of behavior that is different from the person's usual behavior, which also bears a striking resemblance to the definition of mixed personality disorder (or personality disorder not otherwise specified, as it is referred to in the DSM). *Id*. at 358, 685.  As such, it seems clear that all of the diagnoses listed by plaintiff were properly taken into consideration in with her diagnosis of bipolar I disorder.

Further, even if the plaintiff actually suffers from bipolar II disorder, rather than bipolar I, as she contends, the DSM still defines this disorder as "a clinical course that is characterized by the occurrence of one or more Major Depressive Episodes (Criterion A) accompanied by at least one Hypomanic Episode (Criterion B). *Id*. at 392.  A hypomanic episode is then defined as "a distinct period of persistently elevated, expansive, or irritable mood, lasting throughout at least 4 days, that is clearly different from the usual nondepressed mood." *Id*. at 368.  This abnormal mood is accompanied by at least three of the following symptoms if the mood disturbance is elevated or expansive and four of these symptoms if the mood is irritable: "inflated self-esteem or grandiosity, decreased need for sleep, more talkative than usual or pressure to

10

(Rev. 8/82)

keep talking, flight of ideas or subjective experience that thoughts are racing, distractibility, increase in goal-directed activity or psychomotor agitations, and excessive involvement in pleasurable activities that have a high potential for painful consequences. *Id*. Therefore, regardless of whether plaintiff is diagnosed with bipolar I or bipolar II disorder, the diagnosis includes the signs and symptoms of the other diagnoses specified by counsel. Accordingly, we do not believe the ALJ erred in not making specific findings that each of these diagnoses or symptoms were severe, when he determined that plaintiff's bipolar disorder was a severe impairment. It is clear that plaintiff's mental limitations would be the same no matter how her diagnoses were classified.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. On her supplemental interview outline, plaintiff reported the ability to care for her personal hygiene, do the laundry, wash the dishes, change the sheets, iron, vacuum/sweep, take out the trash, perform home repairs, repair the car, wash the car, mow the lawn, rake leaves, perform garden work, shop, run errands, count change, drive familiar and unfamiliar routes, walk, watch television, listen to the radio, read, hike, mountain bike, swim, and write. (Tr. 75, 85). Further, on paperwork she completed for her attorney, plaintiff indicated that she cooks, washes dishes, cleans the house, dusts, makes the bed, perform yard work, gardens, grooms herself, exercises, and takes care of her pets on a daily basis. (Tr. 154). On a weekly basis, plaintiff stated that she drives, mops the floors, does the laundry, performs home repairs, shops for groceries, handles finances, plays cards and games, and goes out to eat. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors,

11

cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, this level of activity is inconsistent with a finding of disability.

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform all physical activity subject to limitation on performing work where the interpersonal contact is incidental to work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has

12

also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and his medical records. On December 16, 2004, a non-examining, consultative psychologist, Dr. Brad Williams, completed a mental RFC assessment. (Tr. 172-191). After reviewing plaintiff's medical records, he concluded that plaintiff was suffering from bipolar disorder, which resulted in mild limitations in the area of activities of daily living and moderate limitations related to social functioning and concentration, persistence, and pace. (Tr. 182). No episodes of decompensation were noted. Dr. Williams also determined that plaintiff would have moderate limitations with regard to understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration; completing a normal workweek; accepting instructions; responding appropriately to criticism from supervisors; and, setting realistic goals or making plans independently of others. (Tr. 188-189). He then indicated that plaintiff could perform work where the

13

interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote, the work required little judgment, and the supervision required was simple, direct, and concrete.  (Tr. 190).

Although plaintiff was assessed with a GAF of 48 in 2004, which is indicative of serious symptoms, it is significant to note that she has reported improvement in her symptoms since that time with the addition of Effexor and  Lorazepam to her medication regimen.  The record is devoid of any evidence to indicate that her treating psychiatrist, Dr. Dollins, or her counselor has placed any limitations on plaintiff's ability to perform in a social setting.  To the contrary, the evidence actually suggests that plaintiff possesses at least some degree of ability to function around others.   In 2004, she told Dr. Brazas that she could go shopping, if she took her medication beforehand.  (Tr. 198).  In addition, she reported to Dr. Dollins that the Effexor had decreased her depressive symptomology.  (Tr. 205).  Records seem to make clear that many of plaintiff's "ups and downs" were situational in nature and of limited duration.  Further, her own self reports indicate that she is able to go out to eat and grocery shopping on a weekly basis.  (Tr. 154).  Given these facts, we find substantial evidence to support the ALJ's determination that plaintiff can perform work involving only incidental interpersonal contact.

We also find substantial evidence to support the ALJ's finding that plaintiff can return to her PRW as an animal caretaker.  The VE testified that a hypothetical person of plaintiff's age, education, and work history, with an unlimited physical capacity and but mental limitations resulting in the need for work where the interpersonal contact required is merely incidental to the work performed, the complexity of the tasks is learned or performed by rote with few variables, the work requires little judgment; and the supervision required is simple, direct and

14

concrete, could perform plaintiff's PRW as an animal caretaker and as a maid.  (Tr. 286-287).

*See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th

Cir. 1996).  We also note plaintiff's own testimony that her work as an animal caretaker required

her to deal "very little" with customers.  (Tr. 271).  As such, it is clear that this position required

only incidental contact with others.  Accordingly, we find substantial evidence to support the

ALJ's determination that plaintiff can return to her PRW as an animal caretaker.

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision

should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be

dismissed with prejudice.

DATED this 15th day of February 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

15